IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DARRYLL BARKSDALE, D.O.**                                                   **PLAINTIFF**

v.                                                    Civil No. 2:24-cv-168-HSO-BWR

**ITALO R. SUBBARAO, D.O. and**
**WILLIAM CAREY UNIVERSITY**                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ITALO R. SUBBARAO, D.O., AND WILLIAM CAREY UNIVERSITY'S MOTION [8] TO DISMISS

Defendants Italo R. Subbarao, D.O., and William Carey University's Motion [8] to Dismiss seeks dismissal of all claims raised against them in Plaintiff Darryll Barksdale, D.O.'s Complaint [1], with the exception of his Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., claim against Defendant William Carey University. The Court finds that the Motion [8] should be denied in part as to the Complaint's [1] tortious interference with an employment contract claim, but granted in part as to all other claims. Plaintiff's ADEA claim against Defendant William Carey University and his tortious interference with employment contract claim against Defendant Italo R. Subbarao, D.O., will proceed.

### I. BACKGROUND

Plaintiff Darryll Barksdale, D.O. ("Plaintiff"), worked for Defendant William Carey University ("William Carey") as an assistant professor at the College of Osteopathic Medicine ("COM") under a series of one-year contracts beginning in November 2016 and ending in August 2024. Compl. [1] at 2. Plaintiff's employment

contract contained no provision granting him any right to renewal. *See* Ex. [1-1] at 1. In 2018, William Carey's COM hired Defendant Italo Subbarao, D.O. ("Subbarao") as its dean, and he remains in that role at present. Compl. [1] at 2. The Complaint [1] alleges that Plaintiff was informed on April 26, 2024, that his contract was not being renewed, despite that the College's Handbook ("the COM Handbook") states that a notification of non-renewal must be sent no later than April 1. *Id.* at 3. Plaintiff was purportedly replaced by substantially younger employees. *Id.* at 5.

Plaintiff alleges that he "performed his duties in an exemplary manner[,] . . . received no disciplinary actions during his entire tenure," and "received better than average evaluations from his supervisors." *Id.* at 2. The Complaint [1] claims that Subbarao is biased against older employees, exhibited "through his repeated expression that Plaintiff and other older employees were 'dinosaurs,'" and that Subbarao "created a toxic work environment for older clinical faculty and has a track record of ostracizing and marginalizing older faculty members so as to make those older professors' jobs so frustrating and difficult that they will be forced to retire." *Id.* at 3. And "[i]f the older employees decline to retire, Defendant Subbar[a]o fires them." *Id.*

Plaintiff further asserts that Subbarao "had animosity toward" him because Subbarao "was insistent upon lowering the academic standards of the college of medicine to attract the maximum number of students, without regard to the academic ability of those students or their ability to be competent physicians," but

2

Plaintiff "expressed concern that students were being admitted who were academically incapable of being competent physicians and passing applicable boards, so as to become licensed to practice medicine." *Id.* at 4. The Complaint [1] theorizes that "Defendant Subbarao wanted to be rid of Plaintiff, in part, because Plaintiff opposed lowering the academic standards for admission to maximize income for the College of Medicine." *Id.* "Plaintiff, as an older person, spoke out against Defendant Subbarao's unethical practices, while younger, less experienced professors were not willing to challenge Defendant Subbarao's unethical behavior." *Id.* The Complaint [1] cites to the Commission on Osteopathic College Accreditation ("COCA") standards, arguing that William Carey was required to commit to "academic freedom and freedom of expression" and that by expressing his disagreement with Subbarao's plans, "Plaintiff was exercising his 'academic freedom and freedom of expression,' which COCA required that he be allowed to express." *Id.*

Plaintiff filed a Charge [1-4] with the Equal Employment Opportunity Commission ("EEOC") on July 23, 2024, which he incorporates into his Complaint [1], *id.* at 6, asserting that he was discriminated against because of his age in violation of the ADEA, *see* Ex. [1-4] at 1. Plaintiff claimed that he was denied a promotion and his contract was not renewed because of his age. *Id.* He received a Right to Sue Letter [1-5], *see* Ex. [1-5] at 1, and timely filed this lawsuit on October 25, 2024, *see* Compl. [1] at 5-6. The Complaint [1] advances claims against both Defendants for age discrimination under the ADEA (Count 1); against William

3

Carey for wrongful termination in violation of COCA standards regarding non-renewals (Count 2); against William Carey for wrongful termination in violation of the COM Handbook (Count 3); against Subbarao for tortious interference with employment (Count 4); and against both Defendants for wrongful termination in violation of COCA standards for penalizing Plaintiff's "freedom of expression and academic freedom" (Count 5). *Id.*

Defendants seek dismissal of Count 1 to the extent it raises a claim against Subbarao because, as a supervisor, he is immune from liability under the ADEA. *See* Mem. [9] at 4-5. They request dismissal of the wrongful termination claims in Counts 2 and 5 because Plaintiff fails to adequately allege that the relevant COCA standards are enforceable public policy under Mississippi law, and dismissal of Count 3 because the COM Handbook disclaims that it is enforceable as a contract. *Id.* at 5-7, 10-11. Specifically, Defendants point out that the COM Handbook incorporates the William Carey University-Wide Handbook, which states that "[i]t is not intended to set forth either express or implied contractual obligations." *Id.* at 8 (quoting Ex. [8-2] at 1). Finally, Defendants seek dismissal of Count 4 on grounds that the Complaint [1] has not asserted sufficient facts to plausibly support a claim that Defendant Subbarao acted in bad faith. *Id.* at 9-10.

Plaintiff responds that Defendant Subbarao is indeed immune from suit under Count 1, Mem. [14] at 5, but contends that Counts 2 and 5 should proceed under the public policy exception announced in *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993), *id.* at 5-9. Plaintiff bases this claim on his theory that

the COCA standards constitute public policy, such that he "was carrying out an important public policy by exercising his academic freedom in urging that Defendant WCU comply with professional standards of conduct." *Id.*  Plaintiff also argues that the COM Handbook incorporates the COCA standards, that it is an enforceable contract because its provisions allegedly conflict with any disclaimer, and that the Court should resolve this ambiguity in his favor at the motion to dismiss stage. *Id.* at 9-13.  As for Count 4, Plaintiff argues that Subbarao interfered with his employment with William Carey based upon his disagreement with Subbarao's admissions policy, which was an act of bad faith.  *Id.* at 14-16.

## II. DISCUSSION

A. Relevant Law

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and the facts alleged must be more than "merely consistent with a defendant's liability." *Id.* (quotation omitted).  A court must accept all well-pleaded facts as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021).

When "considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). But a district court may rely on "any documents the pleadings mention that are central to the plaintiff's claims" when a party files such documents with its motion or response. *In re GenOn Mid-Atl. Dev., L.L.C.*, 42 F.4th 523, 546 (5th Cir. 2022) (citing *Collins*, 224 F.3d at 498-99).

In addressing issues of state law, federal courts usually apply the forum state's substantive law. *See, e.g., Truong v. Bank of America, N.A.*, 717 F.3d 377, 382 (5th Cir. 2013). Here the parties agree that Mississippi law controls the resolution of Plaintiff's state-law claims.

B. <u>Analysis</u>

1. <u>ADEA Claim Against Both Defendants (Count 1)</u>

"[T]he ADEA provides no basis for individual liability for supervisory employees." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 247 (5th Cir. 2017) (quotations omitted). Plaintiff concedes that Defendant Subbarao is a supervisory employee, such that the ADEA claim against him should be dismissed. Plaintiff's ADEA claim against Defendant William Carey will proceed.

2.  <u>Plaintiff's Claims Against Both Defendants for Wrongful Termination in Violation of Public Policy and in Violation of COCA Standards (Counts 2 and 5)</u>

Plaintiff invokes the *McArn* public policy exception to argue that his claims in Counts 2 and 5 should not be dismissed, *see* Mem. [14] at 5-9, but the Mississippi Court of Appeals has held that *McArn* does not apply where an employee's contract of limited duration is not renewed and there is no provision providing for a right of renewal, *Strong v. N. Mississippi Ctr. for Higher Educ. Advancement, Inc.*, 170 So. 3d 567, 569-70 (Miss. Ct. App. 2014).[1]  *Strong* involved similar facts.  *See id.* at 568. There, a plaintiff had disagreed with his supervisor regarding the potential misappropriation of federal funds, and he later received a notice of non-renewal before his employment contract expired.  *Id.*  The plaintiff's employment contract contained no right of renewal, *see id.* at 570, as is the case here, *see* Ex. [1-1] at 1. The Mississippi Court of Appeals held that the plaintiff "was not an at-will employee, as there was nothing stipulated in the contract or between the parties that his employment could be terminated at any time" and that because of this, "the protections enumerated in *McArn* do not apply to [the plaintiff] . . . ."  *Strong*, 170 So. 3d at 570.  As in *Strong*, Plaintiff's *McArn* claims are subject to dismissal because Plaintiff's employment contract contains no right of renewal and there was nothing in the contract making him an at-will employee.  *See id.*

---

[1] A panel of the Mississippi Supreme Court initially granted a writ of certiorari in *Strong*, but the *en banc* Mississippi Supreme Court reversed that decision and dismissed the writ of certiorari.  *See Strong v. N. Mississippi Ctr. for Higher Educ. Advancement, Inc.*, No. 2013-CT-00630-SCT (Miss. July 2, 2015).

But even if Plaintiff were an at-will employee subject to the *McArn* public policy exception, his claims would remain subject to dismissal as a matter of law. Counts 2 and 5 assert that Plaintiff's termination violated COCA standards, which constitute public policy, making his termination wrongful. Compl. [1] at 5. Essentially, Plaintiff posits that his claims in Counts 2 and 5 should be excepted from the employment at-will doctrine's bar on wrongful termination claims. *Id.* Plaintiff has presented no authority to support this proposition, and the Mississippi Supreme Court has "recognized public policy exceptions to the employment at-will doctrine in only two narrow circumstances." *Spiers v. Oak Grove Credit, LLC*, 328 So. 3d 645, 655 (Miss. 2021) (quotations omitted). These exceptions, first adopted in *McArn*, are (1) when employment is terminated because the employee refused to participate in an illegal act, or (2) when employment is terminated because an employee reported an illegal act of the employer. *Brandi's Hope Cmty. Servs., LLC v. Walters*, 391 So. 3d 162, 166 (Miss. 2024) (quoting *McArn*, 626 So. 2d at 607). The Mississippi Supreme Court has held that the only other exceptions arise when an employer fires an employee for reasons "independently declared legally impermissible," generally by statute. *See id.* (discussing two Mississippi statutes which created exceptions to the at-will employment doctrine).

Even when read in a light most favorable to Plaintiff, the Complaint [1] does not allege that Plaintiff reported or refused to participate in any illegal acts, *see generally* Compl. [1], nor has he cited to any authority to support his position that violating accreditation standards has been independently declared legally

8

impermissible, *see generally id.*; Mem. [14]. Therefore, the *McArn* public policy exception does not apply here and Counts 2 and 5 should be dismissed. *See Walters*, 391 So. 3d at 166.

3. <u>Plaintiff's Wrongful Termination Claim Against William Carey in Violation of the COM Handbook (Count 3)</u>

Count 3 alleges that Plaintiff's termination violated the COM Handbook because it requires that a faculty member be informed of non-renewal for the upcoming school year by April 1, but Plaintiff was not notified of his non-renewal until after that date. Compl. [1] at 5-6. Defendants take the position that the COM Handbook, by incorporating the William Carey University-Wide Handbook, contains a disclaimer stating that it is not enforceable as an employment contract. Mem. [9] at 7-9; *see also* Ex. [8-2] at 1 ("This handbook is intended as a general guide on employment and workplace policies. It is not intended to set forth either express or implied contractual obligations.").

"[W]hen [a] handbook expressly disclaims the existence of a contract, no contractual obligations arise between employers and employees." *Leal v. Univ. of S. Mississippi*, 296 So. 3d 660, 666 (Miss. 2020). Plaintiff does not dispute that the COM Handbook disclaims the existence of a contract.[2] Mem. [14] at 12 ("[T]he

---

[2] Plaintiff does not specify whether he is referencing the William Carey University-Wide Handbook or the COM Handbook in his brief and quotes the two interchangeably. *See* Mem. [14] at 9-13. The COM Handbook does not explicitly state that it is not a contract, *see* Ex. [8-1], but the William Carey University-Wide Handbook does, *see* Ex. [8-2] at 1. But any ambiguity as to which Handbook is being referenced is irrelevant for two reasons. First, because Plaintiff concedes that a disclaimer exists, and second, because the COM Handbook incorporates William Carey's University-Wide Handbook. *See* Ex. [8-2] at 1 ("The WCUCOM Faculty Handbook does not supersede or take the place of the WCU Faculty Handbook and Bylaws of the University; nor does it limit in any way the authority of the Board of Trustees. As circumstances warrant, the University reserves the right to make changes from time to time . . . .").

9

Faculty Handbook also says that: 'It is not intended to set forth either express or implied contractual obligations.'" (quoting Ex. [8-2] at 1)). But he posits that this disclaimer is somehow ambiguous because "[t]he Faculty Handbook also contains a provision that anything in university policies contradicted by COCA Standards is 'null and void,'" and because "the William Carey University Mission Statement, says: '[t]he policy guidelines set forth in this document and the Policy and Procedure Manual are official policies of the university and, as part of their contractual obligations, all faculty at all campus locations are responsible to know and abide by these policies.'" *Id.* at 12 (quoting Ex. [8-2] at 1). Plaintiff further asserts that his employment contract contradicts the disclaimer and incorporates the COM Handbook. *Id.* at 11; *see also* Ex. [1-1] ("The faculty member agrees to act in conformity with the University's purposes and values and with the University's expectations of faculty and be subject to the benefits and fiscal matters as delineated in the *Faculty Handbook*. The employee acknowledges having received or having been given electronic access via SaderNet to the *Faculty Handbook* prior to the execution of this contract and agrees to be governed by the policies and provisions as stated in the most current version." (emphasis in original)).

Plaintiff contends that "[i]n order to give effect to all parts of the documents at issue, this Court should hold that the Faculty Handbook does not contain contractual obligations, except as to those obligations set forth in COCA accreditation standards, which, according to Defendant WCU's Faculty Handbook, trump all other policies." *Id.* In other words, Plaintiff does not dispute that the

10

COM Handbook is not enforceable against William Carey as to the requirement to give timely notice of non-renewal, but argues that it is enforceable against William Carey as to the COCA Standards.  But Count 3 only speaks to the alleged failure to timely give notice of non-renewal; Plaintiff cannot now amend Count 3 in his briefs to add new allegations that William Carey violated COCA Standards.[3]  *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotations omitted)).

Even were the Court to find COCA Standards enforceable per the COM Handbook, as Plaintiff requests, Count 3 would still be subject to dismissal because Plaintiff has not alleged facts to plausibly show the standards he references were violated.  *See generally* Compl. [1].  The Complaint [1] cites 2023 COCA Standards 7.2 and 12.8, copies of which are attached as exhibits.  *See* COCA Standard 7.2 [1-6]; COCA Standard 12.8 [1-3].  COCA Standard 7.2 [1-6] requires William Carey's COM to "academically credential and/or approve the faculty at all COM and COM-affiliated teaching sites," and "[p]rovide a copy of the policies and procedures for credentialing and appointment, or approval of all COM faculty."  COCA Standard 7.2 [1-6] at 1.  The Complaint [1] does not allege that William Carey lacks "policies and procedures for credentialing and appointment," COCA Standard 7.2 [1-6] at 1, and instead only claims that William Carey lacks policies for whether an employee should be "renewed or non-renewed," Compl. [1] at 5.  COCA Standard 7.2 can also

---

[3] Plaintiff has not requested leave to amend and the deadline to file such a motion passed on March 13, 2025.  *See* Case Management Order [20] at 4.

11

be satisfied by providing a copy of the "approval of all COM faculty," COCA Standard 7.2 [1-6] at 1, and the Complaint [1] does not assert that William Carey failed to do this, *see generally* Compl. [1].

COCA Standard 12.8 [1-3] requires William Carey's COM to "develop policies regarding academic freedom the proposed COM intends to make publicly available" and are "approved by the proposed COM's governing board."  COCA Standard 12.8 [1-3] at 1.  COCA Standard 12.8 also requires William Carey's COM to provide the proposed COM's policies "evidencing a commitment to academic freedom . . . ." COCA Standard 12.8 [1-3] at 1.  The Complaint [1] does not allege that William Carey failed to develop or submit policies regarding academic freedom, that those policies were not approved by the COM's governing board, or offer any inference that COM policies do not evidence a commitment to academic freedom.  *See generally* Compl. [1].  So, the Complaint [1] does not plead facts to plausibly allege that Defendants violated the COCA Standards at issue.  *See* Compl. [1].  Count 3 should be dismissed.

4. <u>Plaintiff's Malicious Interference with Employment Claim Against Subbarao (Count 4)</u>

Plaintiff claims that Subbarao wrongfully interfered with his employment relationship with William Carey, and tortiously caused his non-renewal for bad faith reasons.  Compl. [1] at 6. Under Mississippi law, the elements of tortious interference with a contract are:

    1. that the acts were intentional and willful;
    2. that they were calculated to cause damage to the plaintiffs in their lawful business;

> 3. that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and
> 4. that actual damage and loss resulted.

*Rex Distrib. Co., Inc. v. Anheuser-busch, LLC*, 271 So. 3d 445, 452 (Miss. 2019) (quotations omitted). "An action for interference with the contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party." *Id.* at 453 (alterations and quotations omitted).

The Mississippi Supreme Court has held that a claim for tortious interference with contracts of employment is viable.[4] *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 746 (Miss. 2019). "The interference complained of must be wrongful in order to be actionable and any interference is not wrongful and actionable if undertaken by someone in the exercise of legitimate interest or right, which constitutes privileged interference." *Id.* For this reason, interference with employment contracts by agents "occupying a position of responsibility on behalf of" a principal is privileged so long as the agent acts "within the scope of that

---

[4] The Mississippi Supreme Court has only addressed tortious interference with contracts of at-will employees and has not specifically addressed the non-renewal of employees under term contracts. *See Gulf Coast Hospice LLC*, 273 So. 3d at 746. Courts in this District have continually opted not to foreclose claims based on tortious interference with a prospective contract or where a third-party causes a non-renewal. *See, e.g.*, *Seven Seas Techs., Inc. v. Infinite Computer Sols., Inc.*, 353 F. Supp. 3d 545, 551-52 (S.D. Miss. 2018) ("[T]he court did not say the claim was lacking simply because it dealt with an induced non-renewal as opposed to a breach."); *Dearman v. Stone Cnty. Sch. Dist.*, No. 1:13-CV-267-HSO-RHW, 2014 WL 1153068, at *8-9 (S.D. Miss. Mar. 21, 2014) (denying a motion to dismiss to the extent it sought dismissal of an interference with the non-renewal of a school district employee's contract); *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 682 F. Supp. 873, 878 (S.D. Miss. 1987), *aff'd*, 873 F.2d 873 (5th Cir. 1989) ("A cause of action for tortious interference with business relations or contractual relations encompasses interference with a prospective relationship as well as an existing one."). Considering that Defendants have not raised this issue and only argue that Subbarao is immune from suit under the supervisor privilege, the Court will resolve this ambiguity in Plaintiff's favor at this early stage. *See* Mem. [9] at 9-10; Reply [21] at 11-14.

responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Morrison v. Mississippi Enter. For Tech., Inc.*, 798 So. 2d 567, 574 (Miss. Ct. App. 2001) (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985)). Bad faith "must be intentional and not merely negligent" and "the purpose must be to interfere with the person's lawful contract or employment relation; there must not be right nor justification involved with the interference." *Id.* at 575.

The parties agree that Subbarao acted as William Carey's agent in a supervisory role and that bad faith must be alleged to survive dismissal. *See* Mem. [9] at 9-10; Mem. [14] at 14. But they dispute whether the Complaint [1] alleges bad faith by asserting that Subbarao caused William Carey to not renew Plaintiff's contract because he had opposed Subbarao's position on COM's admissions policy. *See* Mem. [14] at 15-16; Reply [21] at 11-14. The Court need not resolve whether a personal disagreement over workplace policy can justify a supervisor's interference with an employment contract because the Complaint [1] here sufficiently pleads that Subbarao caused the non-renewal because of Plaintiff's age, which at this early motion to dismiss stage is not a sufficient justification to interfere with an employer-employee relationship. *See Morris v. Young*, No. 1:14-cv-136-SA-DAS, 2016 WL 2354642, at *4-5 (N.D. Miss. May 3, 2016) (allowing a bad faith allegation to proceed where the basis of the allegation is a supervisor's preferential treatment for younger employees).

The Complaint [1] contends that Subbarao preferred younger employees to Plaintiff, *see id.* at 3, and it makes specific allegations as to how Subbarao created a toxic work environment for older employees, making "those older professors' jobs so frustrating and difficult that they will be forced to retire," Compl. [1] at 3; *see also id.* ("If the older employees decline to retire, Defendant Subbarao fires them."). And Plaintiff specifically alleges that his age was the reason for his termination. *See id.* at 5 ("Plaintiff's age, seventy (70) years old, is a but-for cause of his termination."). On the whole, this is sufficient to allege at the pleadings stage that Subbarao acted in bad faith when he purportedly interfered with Plaintiff's employment and caused its non-renewal. *See Gulf Coast Hotel-Motel Ass'n v. Mississippi Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011) (highlighting that a complaint should be read as a whole); *see also Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) ("A complaint need not cite a specific statutory provision or articulate a perfect statement of the legal theory supporting the claim asserted." (quotations omitted)). To be sure, the Complaint [1] could be clearer, but "[w]hat is alleged . . . is sufficient to survive a motion to dismiss" and "goes beyond the allegations rejected in *Twombly* and *Iqbal*." *Gulf Coast Hotel-Motel Ass'n*, 658 F.3d at 506. As it relates to Count 4, Defendants' Motion [8] to Dismiss should be denied.

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Italo R. Subbarao, D.O., and Williams Carey University's Motion [8] to Dismiss is **GRANTED IN PART**, and Count 1, to the extent it asserts a claim against Defendant Italo R. Subbarao, D.O., and Counts 2, 3, and 5 are **DISMISSED WITH PREJUDICE**. The Motion [8] is **DENIED IN PART** as to Count 1's ADEA claim against Defendant William Carey University and Count 4's tortious interference with an employment contract claim against Defendant Italo R. Subbarao, D.O. Those claims will proceed.

**SO ORDERED AND ADJUDGED**, this the 18th day of August, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE